# STATE OF MICHIGAN

# COURT OF APPEALS

---

VHS OF MICHIGAN, INC., doing business as
DETROIT MEDICAL CENTER,

        Plaintiff-Appellee,

and

PATRICK GARDNER, by Guardian DAWN
GARDNER, and MICHIGAN SPINE AND
BRAIN SURGEONS, PLLC,

        Intervening Plaintiffs-Appellees,

and

BOTSFORD GENERAL HOSPITAL and
DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Intervening Plaintiffs,

v

PROGRESSIVE MARATHON INSURANCE
COMPANY,

        Defendant,

and

GEICO INDEMNITY COMPANY,

        Defendant-Appellant.

UNPUBLISHED
July 24, 2018

No. 337616
Wayne Circuit Court
LC No. 15-009104-NF

---

Before: BORRELLO, P.J., and M. J. KELLY and BOONSTRA, JJ.

PER CURIAM.

Defendant, Geico Indemnity Company (defendant), appeals as of right an order dismissing the case with prejudice[1] in this first-party no-fault action.[2] Defendant's issue on appeal relates to a prior order that denied defendant's motion for summary disposition. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This appeal arises out of plaintiff's requests for payment of PIP benefits on Patrick's behalf for injuries sustained by Patrick in a motor vehicle accident on February 28, 2015.[3] On the night of February 27, 2015, Patrick went to a casino with his cousin, Deon Edwards. They left around 4:45 a.m. and during their ride home, Patrick's black Ford Explorer stalled, and all of the vehicle's electricity went out, but it started back up again. Patrick left Edwards's house in Detroit to drop off another cousin, and Patrick told Edwards that he was going to try to make it all the way home before his car stalled again.

Randy Tung was driving on southbound Telegraph Road in the early morning hours on February 28, 2015, from his home in Bloomfield Hills to a gas station that he owned in Garden City. The speed limit in the area of Telegraph Road and Nine Mile Road was 50 miles per hour, with four lanes of southbound travel. Tung was driving in the left lane around 6:10 a.m. or 6:15 a.m.,[4] his headlights were on, and he was not distracted. He first saw Patrick's Ford Explorer in the far left lane when the Ford Explorer was only 20 feet in front of Tung, only a "split second" or "less than one second" before impact. He did not see anyone standing next to the vehicle immediately before the impact, nor did he recall a traffic light at the intersection, and said that he was traveling in the range of upper 40s to 50 miles per hour, but he could have been driving between 50 and 55 miles per hour. Tung testified that his car hit a large SUV that had no blinking lights or emergency signals on and was "a color that you cannot see in the dark."

Photographs taken by an accident reconstructionist of the intersection showed Patrick's Ford Explorer almost directly underneath a traffic light, with an additional streetlight on a utility pole nearby. The narrative on the police report indicates that Patrick's Ford Explorer was "STOPPED IN ROADWAY UNOCCUPIED," Patrick exited his vehicle and stood nearby, and

---

[1] The parties stipulated to the entry of an order for dismissal and consent judgment so a final order existed, and defendant could appeal the trial court's denial of its motion for summary disposition. If defendant does not receive relief on appeal, judgment will be entered in favor of plaintiff and intervening plaintiffs.

[2] All claims against defendant, Progressive Marathon Insurance Company (Progressive), were dismissed in the lower court, and Progressive is not a party on appeal. Hence, Geico Indemnity Company will be referred to as "defendant" herein.

[3] From the outset we note that in defendant's brief they recognize that because Gardner intervened in this action, *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017) does not bar recovery to plaintiff Gardner.

[4] The police report is timestamped at 6:44 a.m., and Tung testified that the police may have arrived at that time.

Tung collided with the Ford Explorer and Patrick. Patrick was taken from the scene by ambulance to Botsford, where he stayed for 30 days, and was then transferred to a hospice facility for another 30 days. Patrick died on October 26, 2016. Gardner testified that the Ford Explorer was leased solely in Patrick's name, and she had her own vehicle, which was insured by defendant. It was ultimately determined that Patrick did not have insurance on his Ford Explorer.

On July 10, 2015, plaintiff filed a complaint against Progressive Insurance Company, alleging that Progressive was the no-fault insurer of highest priority responsible for PIP benefits on Patrick's behalf pursuant to an automobile policy issued to Patrick. Plaintiff provided medical products, services, and accommodations for Patrick's care for bodily injuries that he suffered in the car accident, which totaled $248,996.95. Plaintiff argued that Progressive's refusal to pay was a breach of the automobile insurance contract, as well as a violation of the no-fault act, MCL 500.3101 *et seq*. On September 4, 2015, plaintiff filed an amended complaint to make the same allegations against defendant. Plaintiff asserted that the amount that it was due increased to $1,038,879.43 for medical services provided to Patrick up to that time without clarifying what attributed to the large increase in costs. Defendant and Progressive each filed an answer to the amended complaint denying liability for PIP benefits owed on Patrick's behalf.

On October 1, 2015, Gardner, as the guardian of Patrick, filed a motion to intervene, which was granted by the trial court. Gardner filed an intervening complaint alleging that Patrick underwent medical treatment, lost his employment, and needed attendant care as a result of the injuries that he sustained in the accident, and neither insurer paid any of Patrick's allowable expenses and defendant "and/or" Progressive were the responsible insurers for Patrick's PIP benefits.[5]

Responding to a motion by plaintiff for summary judgment, Progressive asserted that Patrick's alleged policy was fraudulently obtained, and therefore, void at the time of the accident. Progressive asserted that Patrick was never insured with Progressive at any relevant time because his policy was rescinded for failure to ever pay the premium. They claimed that an unidentified individual tried to purchase several no-fault policies from Progressive on a computer located at a public library, using false information and a fraudulent credit card. As no premium was received, Patrick's policy was rescinded on December 6, 2014 and thus, he was not insured with Progressive on the day of the accident.

Progressive and defendant also argued that Patrick's vehicle was uninsured at the time of the accident, and he could not recover PIP benefits. Moreover, Patrick's vehicle was parked, and PIP benefits are not available pursuant to MCL 500.3106(1)(a) unless the vehicle is parked in such a way as to cause an unreasonable risk of the bodily injury that occurred. They argued that Patrick's vehicle was parked in the traveling section of the roadway without emergency flashers or other indicators, so it was parked in such a way as to cause an unreasonable risk of bodily

---

[5] Prior to our Supreme Court's ruling in *Covenant Med Ctr, Inc*, 500 Mich 191, the medical facilities and providers listed in this matter were also allowed to intervene.

injury. Also, they argued that Patrick's vehicle was involved in the accident, Patrick was not a pedestrian, and therefore, he was not eligible for PIP benefits.

A hearing was held on defendant's motion for summary disposition on July 15, 2016. Progressive argued that, if Patrick was considered a pedestrian, and Patrick had no policy with Progressive, then defendant was responsible for Patrick's PIP benefits. Defendant argued that, if there was no Progressive policy, then the vehicle was uninsured, and Patrick was not entitled to first-party PIP benefits. Plaintiff argued that Patrick's car was not involved in the accident and that Tung's testimony demonstrated that he could have avoided the collision because there were three other lanes, it was well lit, he was traveling in the passing lane for an extended period of time, and he was speeding.

In rendering its decision, the trial court found that Patrick was in a motor vehicle collision on February 28, 2015 after he exited his vehicle and left it in the left travel lane of Telegraph Road. Patrick and his vehicle were struck by Tung, and Patrick suffered severe injuries, and was in a coma. Patrick owned his Ford Explorer, and Gardner owned another vehicle that was insured by defendant. At one point, Patrick's car was insured by Progressive, but Progressive asserted that it was fraudulent, and therefore, rescinded coverage. Defendant argued that only two scenarios existed: (1) Patrick was the sole owner of an unreasonably parked vehicle, and Progressive was responsible for benefits, or (2) Patrick was the sole owner of an unreasonably parked and uninsured vehicle involved in an accident, so he was not entitled to any benefits from any insurer. Defendant argued that Patrick's vehicle was unreasonably parked and involved in the accident, relying on the police report, which is inadmissible hearsay evidence. In addition, discovery was still pending, so defendant's motion for summary disposition was premature. Therefore, the court denied defendant's motion for summary disposition and plaintiff's countermotion for summary disposition. Then on February 27, 2017, defendant filed a motion to approve the stipulated order for dismissal and consent judgment so that defendant could file an appeal as of right and challenge the court's denial of defendant's motion for summary disposition. This appeal then ensued.

## II. ANALYSIS

On appeal, defendant argues that the trial court erred when it denied defendant's motion for summary disposition, and entered an order of judgment awarding PIP benefits, pending the outcome of this appeal, to plaintiff. Defendant argues that it was entitled to summary disposition because Patrick was injured while operating his uninsured vehicle, and Patrick's vehicle was involved in the accident because it was parked in a way that caused an unreasonable risk of bodily injury, thereby precluding Patrick from receiving PIP benefits.

As previously stated, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that (1) Patrick's car was parked in such a way to cause an unreasonable risk of bodily injury, and was, therefore, involved in the accident, precluding plaintiff from recovering PIP benefits, and (2) Patrick's vehicle was not insured at the time of the accident, so he was barred from recovery. This Court reviews a motion for summary disposition de novo. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). This Court reviews only the evidence that was presented at the time the trial court made its decision on the motion. *Id*. at 120. A motion for summary disposition under MCR 2.116(C)(10)

challenges the factual sufficiency of a plaintiff's claim. *Id*. at 115. The trial court considers the evidence in the light most favorable to the nonmoving party. *Id*. Summary disposition is proper under MCR 2.116(C)(10) if " 'there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.' " *Id*. at 116 (citation omitted). There is a genuine issue of material fact " 'when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ.' " *Id*. (citation omitted). When "the facts are undisputed, the determination of whether an automobile is parked in such a way as to create an unreasonable risk of bodily injury within the meaning of [MCL 500.3106(1)(a)] is an issue of statutory construction for the court." *Wills v State Farm Ins Co*, 437 Mich 205, 208; 468 NW2d 511 (1991). Issues of statutory construction are also reviewed de novo. *Stewart v State*, 471 Mich 692, 698; 692 NW2d 376 (2004).

Here, the trial court ruled that the parties were asking for summary disposition prior to discovery and seemingly ruled that material questions of fact relevant to the central issue in this case existed. As part of its ruling, the trial court allowed the parties to resubmit their respective motions following the close of discovery, but, as previously described, the parties chose a different course on which to proceed.

The Michigan no-fault act requires the owner of a motor vehicle registered in this state to "maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance." MCL 500.3101(1). The no-fault insurer "is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." MCL 500.3105(1). However, an individual is excluded from receiving PIP benefits for an accidental injury if, at the time of the accident, he or she owned the motor vehicle involved in the accident, and the no-fault insurance required by MCL 500.3101 was not in effect. MCL 500.3113(b).

MCL 500.3106(1) sets forth what the claimant must demonstrate to be entitled to benefits in this matter: an injury resulting from an accident with a parked car, the claimant must demonstrate:

> (1) his conduct fits one of the three exceptions of subsection 3106(1); (2) the injury arose out of the ownership, operation, maintenance, or use of the parked motor vehicle as a motor vehicle; and (3) the injury had a causal relationship to the parked motor vehicle that is more than incidental, fortuitous, or but for. [(citation omitted) (emphasis in original).]

Thus, an individual may receive PIP benefits if the parked vehicle involved in the accident was parked in such a manner as to cause an unreasonable risk of bodily injury. MCL 500.3106(1)(a). An individual is excluded from receiving PIP benefits for injuries involving parked vehicles because such injuries do not normally involve the vehicle as a motor vehicle, but rather, a parked vehicle is similar to any other stationary object, "such as a tree, sign post, or boulder." *Shinn v Mich Assigned Claims Facility*, 314 Mich App 765, 771; 887 NW2d 635 (2016). The parties do not dispute the fact that Patrick's vehicle was parked at the time of the accident, and Patrick had exited the vehicle.

The exceptions to the exclusion for parked cars relate to a vehicle's characteristics that make it dissimilar to other stationary roadside objects that may be involved in accidents. *Heard v State Farm Mut Auto Ins Co*, 414 Mich 139, 144-145; 324 NW2d 1 (1982). The exception in MCL 500.3106(1)(a)

> concerns the act of parking a car, which can only be done in the course of using the vehicle as a motor vehicle, and recognizes that the act of parking can be done in a fashion which causes an unreasonable risk of injury, as when the vehicle is left in gear or with one end protruding into traffic.
>
> * * *
>
> Each of the exceptions to the parking exclusion thus describes an instance where, although the vehicle is parked, its involvement in an accident is nonetheless directly related to its character as a motor vehicle. The underlying policy of the parking exclusion is that, except in three general types of situations, a parked car is not involved in an accident *as a motor vehicle*. It is therefore appropriate to compensate injuries arising from its non-vehicular involvement in an accident within a system designed to compensate injuries involving motor vehicles as motor vehicles. [*Miller v Auto-Owners Ins Co*, 411 Mich 633, 640-641; 309 NW2d 544 (1981) (emphasis in original), abrogation regarding the exception in MCL 500.3106(1)(b) recognized by *Lefevers v State Farm Mut Auto Ins Co*, 493 Mich 960; 828 NW2d 678 (2013).]

The exception in MCL 500.3106(1)(a) recognizes "degrees of risk" associated with a parked vehicle. *Stewart*, 471 Mich at 697. "The statutory language does not create a rule that whenever a motor vehicle is parked entirely or in part on a traveled portion of a road, the parked vehicle poses an unreasonable risk." *Id*. To determine whether a parked vehicle poses an unreasonable risk, factors such as the manner, location, and fashion in which the vehicle is parked should be considered. *Id*. at 699. Recognizing that the trial court was asked, prior to the close of discovery, to make all of these findings, we find that material questions of fact that preclude the granting of summary disposition pursuant to MCR 2.116(C)(10). *Gorman*, 302 Mich App at 116.

We also recognize that MCR 2.116(C)(10) specifies that summary disposition is proper if "there is no genuine issue as to any material fact, *and* the moving party is entitled to judgment … as a matter of law," seemingly, appellant is asking this Court to omit deciding the first prong of the court rule and head directly to the second. (Emphasis added). However, in consideration of this Court's prior findings that it is liberal in finding a genuine issue of material fact, *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008), we hold that questions of fact abound as to whether "[t]he vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred." MCL 500.3106(1)(a). *Drake v Citizens Ins Co of America*, 270 Mich App 22, 33-34; 715 NW2d 387 (2006). Tung alleges that the street lights were not operational at the time of the accident, it was "pitch dark," there was no way he could see Gardner's vehicle, and Gardner's vehicle was not near a traffic signal. Police reports, testimony of other witnesses as well as other documentary evidence rebut Tung's assertions. Hence, after review of the record and giving the benefit of reasonable doubt to the opposing party, we find that genuine

issues of material facts exist in this record. *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013).

Affirmed.  Plaintiff having prevailed may tax costs.  MCR 7.219(A).


/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Mark T. Boonstra